IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Worldwide Network Services, LLC, | ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) ) ) | |
| and | ) ) | |
| Worldwide Network Services International, FZCO, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:07-cv-627(GBL) |
| DynCorp International, LLC, | ) ) ) | |
| Defendant and Counter-Plaintiff. | ) ) ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs Worldwide Network Services, LLC, and Worldwide Network Services International, FZCO's (collectively, "WWNS") Second Motion for Attorneys' Fees. (Dkt. No. 491.) This case concerned Plaintiffs' action against Defendant DynCorp International, LLC ("DynCorp") for racial discrimination in contracting in violation of 42 U.S.C. § 1981. During a jury trial, the Court granted WWNS' Renewed Motion for Judgment as a Matter of Law and awarded $2,783,429.81 on its breach of contract claims. (Dkt. No. 399.) On May 14, 2008, the jury returned a verdict in favor

1

of WWNS and against DynCorp comprised of $3,420,000 in compensatory damages, $10,000,000 in punitive damages. By Order dated June 17, 2008, the Court directed the Clerk to amend the judgment amount on WWNS' contract claims from $2,783,429.81 to $2,553,105.86. (Dkt. No. 414.) The Clerk entered the Amended Judgment on June 19, 2008. (Dkt. No. 415.) On July, 3, 2008, WWNS moved the Court for trial-related attorneys' fees and necessary expenses. (Dkt. No. 425.) On September 22, 2008, the Court ordered DynCorp to pay WWNS $1,822,743.03 in attorneys' fees. (Dkt. No. 461.)

On September 26, 2008, DynCorp filed a Notice of Appeal challenging the punitive damages award. (Dkt. No. 466.) The United States Court of Appeals for the Fourth Circuit vacated the ten million dollar punitive damages award and remanded the case to this Court for "retrial on punitive damages for Count 3." *Worldwide Network Servs., LLC v. DynCorp Int'l, LLC*, Nos. 08-2108 & 08-2166, 2010 WL 489477, at *13 (4th Cir. Feb. 12, 2010). WWNS now moves the Court for attorneys' fees associated with the appeal. (Dkt. No. 491.)

There are five issues before the Court. The first issue is whether WWNS is a "prevailing party" within the meaning of 42 U.S.C. § 1988. The second issue is whether the claimed fees represent a reasonable number of hours at a reasonable rate charged. The third issue is whether the Court should reduce

WWNS' claimed fees because some of the ambiguous fee entries may include time spent on the punitive damages issue. The fourth issue is whether WWNS is entitled to recover fees and expenses for work done with its damages expert in preparation for its cross-appeal. The fifth issue is whether a reduction to the claimed fee amount is warranted based on the degree of success WWNS achieved on appeal.

The Court grants WWNS' Second Motion for Attorneys' Fees in the amount of $394,031.01 for five reasons. First, the Court concludes that WWNS is a "prevailing party" entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 because the Fourth Circuit affirmed DynCorp's liability for the central issue on appeal. Second, the Court finds WWNS' proposed lodestar figure reasonable as to hours expended and rate charged because the time expended was necessary for the appeal and WWNS properly documented the reasonableness of the claimed hours and rates. Third, the Court reduces ambiguous fee entries of WWNS' lead attorneys on this case by ten percent because these entries may include fees for time spent on the unsuccessful punitive damages claim. Fourth, the Court finds that WWNS is entitled to recover fees and expenses related to preparation of its damages expert because DynCorp's appeal necessitated that WWNS preserve the issue of the expert's initial exclusion and seek admission of his testimony in the event of a remand on the issue of damages.

Fifth, the Court finds no reduction necessary based on the degree of success obtained because WWNS succeeded on every issue raised on appeal except the punitive damages issue.

## I. BACKGROUND

This action arose from DynCorp's termination of its contractual relationship with WWNS in the summer of 2006. On October 5, 2006, WWNS timely filed its Complaint against DynCorp alleging race discrimination, defamation, tortious interference with contract, tortious interference with prospective business advantage, two counts of civil conspiracy, breach of contract, and breach of the implied covenant of good faith and fair dealing. During the jury trial, the Court granted WWNS' Renewed Motion for Judgment as a Matter of Law on its breach of contract claims and awarded $2,783,429.81 prior to the conclusion of the ten day trial. (Dkt. No. 399.) On May 13, 2008, DynCorp filed a Motion for Reconsideration of the Court's May 12, 2008 Rule 50 Order. (Dkt. No. 400.) On May 14, 2008, the jury returned a verdict in WWNS' favor finding DynCorp liable for discrimination, tortious interference with employment contracts, breach of contract, and breach of the covenant of good faith and fair dealing. In addition to awarding 3.42 million dollars in compensatory damages, the jury awarded WWNS ten million dollars in punitive damages on Counts I and III, the § 1981 claim and

the contract claims, respectively. On May, 23, 2008, the Clerk entered judgment in favor of WWNS and against DynCorp in accordance with the jury's verdict. (Dkt. No. 407.) By Order dated May 30, 2008, recognizing DynCorp's Motion for Reconsideration remained pending, the Court vacated the May 23, 2008 Judgment and directed the Clerk to enter an amended final judgment upon resolution of DynCorp's motion. (Dkt. No. 408.) By Order dated June 17, 2008, the Court granted in part and denied in part DynCorp's Motion for Reconsideration. (Dkt. No. 413.) The Court issued a separate order reducing the amount of the judgment pertaining to WWNS' contract claims from $2,783,429.81 to $2,553,105.86. (Dkt. No. 414.) Accordingly, on June 19, 2008, the Clerk entered an Amended Judgment in the amount of $15,973,105.86 in favor of WWNS. (Dkt. No. 415.) After entry of judgment, WWNS moved the Court for trial-related attorneys' fees and necessary expenses. (Dkt. No. 425.) On September 22, 2008, the Court ordered DynCorp to pay WWNS' attorneys' fees in the amount of $1,822,743.03. (Dkt. No. 461.)

On September 26, 2008, DynCorp filed an appeal with the Fourth Circuit on three primary grounds. First, DynCorp challenged the finding of § 1981 liability on grounds that this Court's denial of its renewed Federal Rule of Civil Procedure 50(b) motion was an abuse of discretion. Second, DynCorp requested a new trial based on numerous, allegedly erroneous

evidentiary rulings by the Court, including challenges that: (1) the testimony of WWNS' minority executive was irrelevant; (2) the testimony of WWNS' consultant was prejudicial; and (3) the testimony of WWNS' information-technology witness was beyond the scope of permissible lay testimony. Third, DynCorp requested that the Fourth Circuit vacate or remit the attorneys' fees award and the jury's award of punitive damages on grounds that one of the jury instructions given was improperly prejudicial. On October 22, 2008, WWNS filed a cross-appeal in response to DynCorp's appeal to request that its initially excluded damages expert, Mr. Alexis Maniatis, now be admitted in the event of a remand on the issue of damages.

On February 12, 2009, a three judge panel of the Fourth Circuit rejected all of DynCorp's arguments except its challenge to the punitive damages award with respect to Count I, the § 1981 claim. The Fourth Circuit vacated the punitive damages award, finding that this Court's failure to properly instruct the jury on the legal meaning of "malice," a required element of a § 1981 claim, resulted in "serious prejudice" to DynCorp. The Fourth Circuit remanded the case for retrial on the amount of punitive damages specifically allocable to Count III because the jury's verdict did not specify what portion of the punitive damages award went to Count I as opposed to III.

On April 20, 2010, WWNS timely filed its Second Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988. WWNS now moves the Court for $415,735.81 in attorneys' fees and other necessary expenses as the prevailing party on appeal.

## II. STANDARD OF REVIEW

Under the "American Rule," parties are responsible for bearing the costs of their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). As such, courts generally will not award attorneys' fees absent explicit statutory authority. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814-15 (1994).

42 U.S.C. § 1988 authorizes a court to grant reasonable attorneys' fees and expert fees to a "prevailing party" when the factfinder determines that the opposing party violated 42 U.S.C. § 1981. 42 U.S.C. § 1988(b)-(c) (2000). Section 1988 grants a court the sole discretion to determine the attorneys' fees award based on the independent facts of the case. *Id.*; *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A "prevailing party" moving for attorneys' fees must show through clear and convincing evidence that the amount requested is reasonable. *EEOC v. Nutri/Sys., Inc.*, 685 F. Supp. 568, 572 (E.D. Va. 1988); *see also Hensley*, 461 U.S. at 440-41 (Burger, C.J., concurring).

Where a "prevailing party" is authorized attorneys' fees, a court must undertake three analytical steps in calculating a reasonable fee award. *See Robinson v. Equifax*, 560 F.3d 235, 243-44 (4th Cir. 2009). First, a court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* at 243 (citing *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Second, after "determining the [reasonableness of the] figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244 (internal citation omitted). Third, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

## III. ANALYSIS

The Court grants WWNS' Second Motion for Attorneys' Fees in the amount of $394,031.01. As an initial matter, the Court finds that WWNS is a "prevailing party" entitled to attorneys' fees pursuant to § 1988 because the Fourth Circuit affirmed DynCorp's liability for the central, § 1981 issue. The Court finds WWNS' proposed lodestar figure reasonable as to hours expended and rate charged because the time expended was necessary for the appeal and WWNS properly documented the

reasonableness of the claimed hours and rates. The Court reduces the ambiguous fee entries of WWNS' lead appellate attorneys by ten percent because these entries may include fees for time spent on the unsuccessful punitive damages claim. The Court finds that WWNS is entitled to recover fees and expenses associated with the preparation of its damages expert because DynCorp's appeal necessitated that WWNS preserve the issue of the expert's initial exclusion and admission of his testimony in the event of a remand on the issue of damages. Finally, the Court finds WWNS sufficiently demonstrates a substantial degree of success because WWNS succeeded on every issue raised on appeal except the punitive damages award.

A. Prevailing Party

As an initial matter, the Court finds that WWNS is a prevailing party entitled to attorneys' fees under § 1988 because the jury found DynCorp liable for violating § 1981 and the Fourth Circuit affirmed the judgment in the form of compensatory damages. A court may award attorneys' fees only to those parties who achieve at least some relief on the merits of the claim. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that

directly benefits the plaintiffs." *Id.* at 111-12; *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (holding that "the plaintiffs must be able to point to a resolution of the dispute which changes the legal relationship between itself [sic] and the defendant"). The plaintiffs must also secure an enforceable judgment that benefits them at the time of relief. *Farrar*, 506 U.S. at 111. In other words, plaintiffs prevail when a jury enters judgment, or an appellate court affirms in the plaintiffs' favor, regardless of the amount of damages received. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Farrar*, 506 U.S. at 112-13 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit.").

Here, a jury found DynCorp liable to WWNS for unlawful discrimination and other violations of the law. Although the Fourth Circuit vacated the punitive damages award, it upheld the jury's finding that DynCorp unlawfully discriminated in terminating its contractual relationship with WWNS. The Fourth Circuit also left intact the Court's $2,553,105.86 award to WWNS on the breach of contract claims. Furthermore, WWNS prevailed on the merits of the case because the verdict and judgment on appeal modified the parties' relationship and changed DynCorp's behavior towards WWNS under *Farrar* as to the central, § 1981

claim. Therefore, WWNS is a "prevailing party" entitled to an award of its reasonable appellate attorneys' fees.

B. Lodestar Figure

The Court finds WWNS' proposed lodestar figure reasonable as to hours expended and rate charged because the time expended was necessary for the appeal and WWNS properly documented the reasonableness of the hours claimed and rates charged. When calculating a reasonable award of attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson*, 560 F.3d at 243. A court's discretion in determining the reasonableness of both hours and rate is guided by twelve factors:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (7) the time limitations imposed by the
> client or circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10) the
> undesirability of the case within the legal community
> in which the suit arose; (11) the nature and length of
> the professional relationship between attorney and
> client; and (12) attorneys' fees awards in similar
> cases.

*Robinson*, 560 F.3d at 243 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714

(5th Cir. 1974))). The attorneys' fees applicant should "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which [it] seeks an award." *Comstock Potomac Yard, L.C. v. Balfour Beatty Const., LLC*, No. 1:08cv894, 2010 WL 678129, at *23 (E.D. Va. Feb. 23, 2010) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990)). Examples of what constitutes satisfactory specific evidence "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245; *Plyler*, 902 F.2d at 278 ("[A]ffidavits testifying to [the fee applicants'] own rates, experience and skills as well as affidavits of South Carolina lawyers who were familiar both with the skills of some of the [fee] applicants and more generally with civil rights litigation in South Carolina . . . . [were] sufficient evidence of the prevailing market rates . . . .").

The Court finds WWNS' proposed lodestar figure reasonable as to hours expended because the time expended was necessary for

the appeal. Here, DynCorp challenged the finding of § 1981 liability, requested a new trial based on numerous, allegedly erroneous evidentiary rulings by the Court, and requested that the Fourth Circuit vacate or remit the attorneys' fees award and the jury's award of punitive damages. In order to properly respond on appeal and defend its jury award, WWNS was required to focus on DynCorp's challenges and produce a very detailed appellate brief. Notably, WWNS' attorneys did not request fee compensation for:

> (1) all time expended during October and November 2008 (including time spent reviewing notice of appeal and filing the necessary form with the Fourth Circuit); (2) all time expended during May, June, July and August 2009 (the time between the last filing and oral argument preparation, when Akin Gump attorneys monitored and reviewed legal discussions bearing on the appeal); and (3) all time billed by seven Akin Gump attorneys who worked on discrete issues during the appeal (including that of Michele Roberts, Debra Drake, and Andrea Vavonese, all of whom were members of WWNS' trial team).

(Pls.' Mem. 9.)

Additionally, the Court finds WWNS' claimed fees reasonable as to rate charged because the rates reflect work performed by senior appellate attorneys. WWNS enlisted Mr. Anthony Pierce and Ms. Patricia Millett, both senior appellate attorneys, to prepare and argue this case before the Fourth Circuit on appeal. The appellate work involved was extensive because DynCorp appealed several key aspects of the case. DynCorp challenged the finding of § 1981 liability, requested a new trial based on

numerous, allegedly erroneous evidentiary rulings by the Court, and requested that the Fourth Circuit vacate or remit the attorneys' fees award and the jury's award of punitive damages. Thus, the necessary appellate work required experienced appellate attorneys. The more experienced the attorney, the higher the rates such an attorney may reasonably charge. Therefore, the Court finds the rates charged by WWNS' senior appellate attorneys reasonable.

Further, the Court finds that WWNS has provided satisfactory specific evidence of the rates charged in this community for this type of work. WWNS submitted documentation identifying the number of hours spent on specific tasks and, for the most part, describing the tasks with sufficient detail. (Pls.' Mem. Exs. A & B.) In addition to its own affidavits, WWNS also submitted the affidavit of Ms. Emily M. Yinger, a practitioner in the Eastern District of Virginia experienced with cases involving complex federal court litigation and awards of attorneys' fees. (Pls.' Mem. Ex. C ¶¶ 3-5.) Ms. Yinger attested to being familiar with the qualifications, background, and experience of both Ms. Millett and Mr. Pierce. (Pls.' Mem. Ex. C ¶ 8.) She also attested that both the number of hours expended and the rates charged by Ms. Millett and Mr. Pierce were reasonable. (Pls.' Mem. Ex. C ¶ 8.) Thus, WWNS provides satisfactory specific evidence because it submitted an affidavit

of a local lawyer who has attested to being familiar with the skills of the WWNS' lead appellate attorneys and the going rates in this community for this type of work. Accordingly, the Court finds the claimed amount properly documented and reasonable as to hours expended and rate charged.

C. Reduction for Unsuccessful and Unrelated Claims

Although the hours expended and rate charged by WWNS' attorneys were reasonable, the Court finds a reduction appropriate because WWNS requests fees for: (1) time spent on the unsuccessful issue of punitive damages, and (2) time that is improperly "lumped" such that the Court cannot determine what portion of the time was spent on unsuccessful claims. After "determining the [reasonableness of the] figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Comstock*, 2010 WL 678129, at *23.

Here, WWNS concedes that its requested fees should be reduced for part of Mr. Shin's legal research costs and two fees of Mr. Bailey's, both of which included time spent on the unsuccessful issue of punitive damages. (Pls.' Mem. 2; Pls.' Mem. Ex. A at 17.) Accordingly, the Court reduces Mr. Shin's computer-based legal research costs by the conceded twenty-five percent, or $2,909.25, because portions of that research

involved the punitive damages issue. (Pls.' Reply Mem. 1 n.1.) The Court further deducts all fees charged by Mr. Bailey for February 24 and 25, 2009, a total of $3,912.00, because the nature of that work involved the punitive damages issue. (Pls.' Reply Mem. 1 n.2.) Therefore, the Court reduces WWNS' proposed fees by $6,821.25, resulting in a lodestar figure of $408,914.56.

DynCorp argues that the claimed fees should be further reduced because many of the attorneys' time entries are inappropriately "lumped" together and may improperly include time spent on unsuccessful activities. (Def.'s Opp'n. 2.) The Court agrees. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Because Mr. Pierce and Ms. Millett frequently "lump" tasks together under one billing entry, it is impossible for the Court to determine whether these entries include time spent on the punitive damages issue. Thus, the Court finds it appropriate to reduce each of these entries by ten percent to account for any time potentially spent on the punitive damages issue.[1] *See id.* (finding that a court could reduce a fee award

---

[1] In so doing, however, the Court does not find it necessary to reduce Mr. Pierce's and Ms. Millett's entries related to the preparation of amicus briefs.

if attorney provided inadequate documentation by (1) fixing a percentage or reducing an amount or (2) excluding those hours not adequately documented). This additional reduction totals $14,883.55, which results in a lodestar figure of $394,031.01.

DynCorp also argues that WWNS may not recover fees associated with the preparation of WWNS' damages expert because "the cross-appeal was not connected, legally or factually, to the jury's Section 1981 verdict or defense thereof on appeal" and is thus unrelated to WWNS' claims. (Def.'s Opp'n 4.) The Court rejects DynCorp's argument because DynCorp's appeal necessitated that WWNS preserve the issue of the expert's initial exclusion and seek admission of his testimony in the event of a remand on the issue of damages. Although the Court excluded the testimony of Mr. Maniatis at trial, the award of appellate fees is not affected by this evidentiary disposition. Thus, the Court's previous ruling does not prevent WWNS from recovering fees related to preparing the expert on appeal. Moreover, WWNS needed to preserve the issue of the expert's exclusion for review in case the Fourth Circuit remanded on the issue of damages. Therefore, the Court finds that fees associated with the preparation of Mr. Maniatis are properly awarded.

D. The Degree of Success Obtained

The Court finds unwarranted a further reduction based on the degree of success obtained because WWNS achieved a substantial degree of success in this case and on appeal. "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244. In determining an attorneys' fees award, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. When "a plaintiff has obtained excellent results, . . . the fee award should not be reduced simply because the plaintiffs failed to prevail on every contention raised in the lawsuit." *Id.* at 435.

Citing *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992), DynCorp argues that the Court should reduce WWNS' attorneys' fee award by thirty percent based on its "limited degree of success." (Def.'s Opp'n 6.) However, the Court finds *Goodwin* distinguishable from this case. In *Goodwin*, the court ordered a fifty percent reduction in attorney's fees because the plaintiff prevailed on only one of its initial thirteen claims. *Goodwin*, 973 F.2d at 383. Here, the jury returned a significant verdict in favor of WWNS and against DynCorp, finding discrimination and other violations of the law. Moreover, while WWNS did not succeed on appeal concerning the punitive damages issue, the

Fourth Circuit nonetheless affirmed awards to WWNS in excess of $5 million, specifically upholding DynCorp's liability for unlawful discrimination. Furthermore, the punitive damages issue was the only issue on appeal in which WWNS did not prevail, making the current disposition an "excellent result" for WWNS under *Hensley*. Therefore, the Court finds that WWNS achieved a substantial degree of success and will not further reduce the claimed fees.

## IV. CONCLUSION

The Court grants Plaintiffs' Second Motion for Attorneys' Fees because WWNS prevailed on its claim against DynCorp and sufficiently demonstrated the reasonableness of the claimed appellate fees. The Court reduces the claimed amount by a total of $21,704.80 because WWNS' request includes time spent on the unsuccessful punitive damages claim. Accordingly, the Court awards WWNS a total of $394,031.01 in attorneys' fees. Therefore, it is hereby

ORDERED that Plaintiffs' Second Motion for Attorneys' Fees is GRANTED. It is further

ORDERED that Defendant DynCorp International, LLC pay Plaintiffs Worldwide Network Services, LLC and Worldwide Network

Services International, FZCO attorneys' fees in the amount of $394,031.01.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 23rd day of July, 2010.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge